**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| WILLIAM T. COOPER, et al.,         ) | |
|                                    ) | |
|         Plaintiffs,                ) | |
|                                    ) | |
|     vs.                            ) | Case No. 1:17-cv-00073-JAR |
|                                    ) | |
| CORY HUTCHESON, et al.,            ) | |
|                                    ) | |
|         Defendants.                ) | |
|                                    ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on a Motion to Dismiss filed by Defendant Securus Technologies, Inc. ("Securus"). (Doc. 69.) Securus seeks to dismiss all claims against it. (*Id.*) Plaintiffs William T. Cooper, Jay R. Holcomb, Jeffery D. Johnson, Jeremy S. Stoelting, and James D. Patton filed a response in opposition (Doc. 70), and Securus has replied (Doc. 71).

## Background

Plaintiff allege the following in their Second Amended Complaint (Doc. 53): Securus is a telecommunications company that offers, among other services, "Location Based Services" ("LBS")—individual tracking that works by sending a "ping" to that individual's cellular telephone and triangulating which cell tower reacts. Before each search, the LBS program prompts users to upload documentation showing that the search is authorized.

The Sheriff's Department for Mississippi County, Missouri, contracted for LBS from Securus. Defendant Cory Hutcheson was the Sheriff for Mississippi County and had access to the Securus LBS program and used it to conduct unauthorized searches on Plaintiffs and others. To skirt the requirement to submit authorizing documentation, Hutcheson routinely uploaded

1

unrelated documents including a copy of his health insurance policy, pages from the Mississippi County Sheriff's training materials, forged consents, and documents he had notarized himself. The document upload requirement is the only safeguard against misuse of the LBS system and Securus does not independently verify or otherwise ensure that the documents are legitimate.

Plaintiffs allege that Hutcheson's use of the LBS program constituted an unreasonable search in violation of the Fourth Amendment. Plaintiffs argue that Securus is liable under 42 U.S.C. § 1983 for Hutcheson's abuse of the program due to its failure to properly safeguard against misuse. In addition, they advance state law claims for invasion of privacy and negligence against Securus.

Securus now moves to dismiss the claims against it, arguing that the § 1983 claim fails because Securus is not a state actor and that Hutcheson's actions were not unconstitutional. (Doc. 69.) In addition, Securus argues that Plaintiffs did not have an enforceable right to privacy related to their cell phone location data. (*Id.*) Finally, it argues that Plaintiffs' negligence claim fails because Securus had no duty to prevent Hutcheson's misuse. (*Id.*)

## Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (citations omitted). "When ruling on a motion to dismiss [under Rule 12(b)(6)], the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

## Discussion

### *Plaintiffs' 42 U.S.C. § 1983 Claim*

In Count II of their Second Amended Complaint, Plaintiffs allege that Securus is liable under § 1983. (Doc. 53 at ¶¶ 48-57.) "The essential elements of a § 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009) (citing *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999)).

### a. State Actor

Securus argues that it cannot be liable under § 1983 because it is not a state actor. "A public official 'acts under color of law when he misuses power possessed by virtue of . . . law and made possible only because he was clothed with the authority of . . . law.'" *Ramirez-Peyro v. Holder*, 574 F.3d 893, 900 (8th Cir. 2009) (quoting *United States v. Colbert*, 172 F.3d 594, 596 (8th Cir. 1999)). The United States Supreme Court has recognized several circumstances in which a private party may also be characterized as a state actor, including: (1) where the state has delegated to a private party a power "traditionally exclusively reserved to the State," *see Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974); (2) where a private actor is a "willful participant in joint activity with the State or its agents," *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 151 (1970); and (3) where there is "pervasive entwinement" between the private entity and the

3

state, *see Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 291 (2001). In every case, Plaintiff must show that there is a "close nexus" between the state and the private party as well as between the state and the alleged deprivation itself. *Meier v. City of Saint Louis*, 934 F.3d 824, 829 (8th Cir. 2019) (quoting *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007)).

The parties devote substantial argument to whether Securus's provision of LBS amounts to a delegation of a traditional government function. (*See* Docs. 69 at 4-5, 70 at 4.) But the Court concludes that, at this stage of the proceeding, Plaintiffs have alleged sufficient facts from which the Court could reasonably conclude that Securus was a "willful participant in joint activity with the State or its agents." *Adickes*, 398 U.S. at 151. Put simply, the Mississippi County Sheriff's Department could not conduct LBS tracking without Securus and Securus—which asserts that its users are "exclusively law enforcement personnel" (Doc. 69 at 1)—sells a product designed to be used in tracking individuals for criminal investigation. Securus is a willing participant in the joint activity of conducting LBS searches. For the same reasons, the Court concludes that Plaintiffs' allegations, accepted as true, illustrate a close nexus between the Mississippi County Sheriff's Department and Securus and between the Sheriff's Department and the alleged deprivation. *See Meier*, 934 F.3d at 829.

      b. **Constitutional Violation**

Securus also argues that Plaintiffs' allegations do not amount to a constitutional violation because LBS is not an unreasonable search under the Fourth Amendment. (Doc. 69 at 6.) The Fourth Amendment prohibits warrantless searches that implicate information in which a person would have a reasonable expectation of privacy. *See, e.g.*, *United States v. Wells*, 648 F.3d 671, 678 (8th Cir. 2011).

Securus argues that Plaintiffs do not have a reasonable expectation of privacy in their location.  (Doc. 69 at 7.)  It cites *United States v. Knotts*, 460 U.S. 276, 282 (1983), for the proposition that "there is no expectation of privacy in public places." (Doc. 69 at 6.)  The Supreme Court has long held that physically surveilling and tracking suspects is permissible and that the use of technology does not necessarily transform a valid search into a Fourth Amendment violation:  "Nothing in the Fourth Amendment prohibit[s] the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded." *Knotts*, 460 U.S. at 282.  To that end, Securus notes that the 6th Circuit has held that the use of cell site information to track an individual is not significantly different than constitutional visual surveillance.  *United States v. Skinner*, 690 F.3d 772, 778 (6th Cir. 2012).

Plaintiffs point to *Carpenter v. United States*, 138 S. Ct. 2206, 2218 (2018), a more recent case dealing directly with the use of cell phone tower data to track an individual's location.  The *Carpenter* Court distinguished "the unique nature of cell phone location records" from other surveillance and found that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through [cell-site location information ('CSLI')]".  *Id.* at 2217.

Securus responds that the tracking in *Carpenter* implicated a different technology and "addressed a situation in which law enforcement extensively mapped out a private citizen's past movements over a period of more than four months, obtaining over 100 data points every day on the individual." (Doc. 71 at 2 (citing *Carpenter*, 138 S. Ct. at 2217).)  It asserts these differences are too great to make *Carpenter* a fair benchmark.

The Court concludes that, while there are factual differences between the long-term continuous monitoring through CSLI used in *Carpenter* and the use of cell-tower pings present in

this case, the similarities are sufficient to survive dismissal. Like in *Carpenter*, Securus's LBS technology allows police to locate and track, on demand, any individual carrying a cellphone. Hutcheson may have used the technology sporadically, but the privacy interest is the same. At this early stage, the Court concludes that plaintiffs have alleged sufficient facts to allow the Court to conclude that the use of LBS is a Fourth Amendment search. As such, the warrantless search of LBS data could amount to a Fourth Amended violation sufficient to support a § 1983 claim.

### c. Damages

Securus also argues that Plaintiffs have failed to allege compensable damages stemming from the purported constitutional violation. (Doc. 69 at 12.) In their complaint, Plaintiffs allege that Securus's lack of oversight allowed Hutcheson to violate their "clearly established statutory and constitutional rights," and that, "[a]s a direct and proximate result of Securus's conduct . . . Plaintiffs have suffered damages, including but not limited [to] emotional distress, anxiety and humiliation associated with being illegally monitored and being the subject of the investigation and prosecution of Mr. Hutcheson." (*See* Doc. 53 at ¶¶ 56, 57, 75.)

Securus argues as a basic matter that Plaintiffs cannot prove damages because they cannot prove a constitutional violation. Having found that Plaintiffs alleged sufficient facts to survive dismissal on that point, the Court rejects Securus's argument. Moreover, the Court concludes that Plaintiffs' alleged emotional injury is enough. "[C]ompensatory damages [for civil rights violations] may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances." *Mo. Comm'n on Human Rights v. Red Dragon Rest., Inc.*, 991 S.W.2d 161, 171 (Mo. Ct. App. 1999) (quoting *Johnson v. Hale,* 940 F.2d 1192, 1193 (9th Cir. 1991) (first alteration added).

Punitive damages, meanwhile, are available in § 1983 claims "when defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Plaintiffs assert that the Fourth Amendment violation was "committed with reckless and/or callous indifference." (*See* Doc. 53 at ¶¶ 57, 76.) The reckless or callous nature of Securus's actions, if proven, may be a fact question reserved for the factfinder at a later date.

Accordingly, the Court will deny Securus's Motion to Dismiss Count II.

### *Plaintiffs' Invasion of Privacy Claim*

In Count IV, Plaintiffs allege that Securus's LBS technology was used by Hutcheson to invade their privacy in violation of Missouri Law. (Doc. 52 at ¶¶ 64-69.) The Missouri Supreme Court has long recognized a general right of privacy, *see Barber v. Time, Inc.*, 159 S.W.2d 291 (1942), and specifically the unreasonable intrusion upon the seclusion of another, *Hester v. Barnett*, 723 S.W.2d 544, 562 (Mo. Ct. App. 1987); *see also*, (Doc. 52 at ¶ 66). To state a claim for invasion of privacy for the unreasonable intrusion upon the seclusion of another, the plaintiff must show "(1) the existence of a secret and private subject matter; (2) a right in the plaintiff to keep that subject matter private; and (3) the obtaining by the defendant of information about that subject matter through unreasonable means." *St. Anthony's Med. Ctr. v. H.S.H.*, 974 S.W.2d 606, 609-10 (Mo. Ct. App. 1998).

Securus first argues that Plaintiffs "do not enjoy a clear right to privacy in their cell phone LBS data under Missouri law, which is at best unsettled." (Doc. 69 at 8.) It asserts that Missouri courts "frequently consult the Fourth Amendment" to determine when given subject matter interest could reasonably be considered secret and private, and then references its § 1983 argument that LBS is not a constitutional violation. (*Id.* at 8-9.) Having already decided that obtaining LBS data

7

could reasonably support a Fourth Amendment violation, the Court finds Securus's reliance on that argument unavailing.

Securus also directly argues that an individual's travel through public space has never been considered secret or private. It offers cases from District Courts in New Jersey,[1] Florida,[2] Maryland,[3] and New York[4] for the proposition that "no person has a reasonable expectation of privacy in cell phone location information." (*Id*. at 9.) In addition, it argues that "intrusions" under Missouri law typically relate to physical trespasses into private areas rather than collecting information. (*Id*.)

Plaintiffs respond that, in the absence of binding authority, the reasonableness of a given intrusion is a fact question for the jury. (Doc. 70 at 6-7.) They reiterate that recent Supreme Court precedent illustrates the continual expansion of privacy rights surrounding cell phone usage—

---

[1] The Court notes that the District Court for the District of New Jersey dismissed the Fourth Amendment claim without prejudice because the allegations were "vague and conclusory" and not because it found that there is no reasonable expectation of privacy in cell phone location data. *Braxton v. Lenhardt*, No. CIV.A. 12-5155 RBK, 2013 WL 3336685, at *5 (D.N.J. July 2, 2013).

[2] In *United States v. Madison*, No. 11-60285-CR, 2012 WL 3095357, at *9 (S.D. Fla. July 30, 2012), the District Court for the Southern District of Florida concluded that "society is not prepared to recognize as legitimate any subjective expectation" that cell-tower location data would be private, based on the third-party doctrine.

[3] In *United States v. Graham*, 846 F. Supp. 2d 384, 403 (D. Md. 2012), *aff'd but criticized in*, 796 F.3d 332 (4th Cir. 2015), *adhered to in part on reh'g en banc*, 824 F.3d 421 (4th Cir. 2016), and aff'd, 824 F.3d 421 (4th Cir. 2016), the District Court for the District of Maryland concluded that, despite the significant pace of development of privacy law and cell phones, the third-party doctrine precluded a finding that cell-tower location data could reasonably be expected to remain private.

[4] The District Court for the Southern District of New York held in *United States v. Navas*, 640 F. Supp. 2d 256, 264 (S.D.N.Y. 2009), *rev'd in part*, 597 F.3d 492 (2d Cir. 2010), that the plaintiff did not have a reasonable expectation of privacy in cell phone location data because the phone was used only in public, he was not the owner of the phone, and "[if he] intended to keep the cell phone's location private, he simply could have turned it off."

*Carpenter* was decided after all four of Securus's cited cases—and rejects Securus's suggestion that Missouri limits invasion of privacy claims to physical trespasses. (*Id*.)

Neither Plaintiffs nor Securus has provided the Court with binding precedent directly on point. As Securus notes, when it comes to privacy and LBS, Missouri law "is at best unsettled." (Doc. 69 at 8.) Moreover, the state of the law continues to evolve with each new opinion from the United States Supreme Court even while the technology used to surveil individuals is itself rapidly changing. Ultimately, this Court concludes that *Carpenter* is the most recent and most relevant authority, and it will again apply its reasoning to find that Plaintiffs have alleged sufficient facts from which the Court could reasonably conclude they had a protected privacy interest in their cell-tower data. Once again, the Court notes that there are relevant factual differences between the long-term continuous monitoring through CSLI used in *Carpenter* and the use of cell-tower pings present in this case, but concludes that, at this early stage, those differences do not mandate dismissal. Put simply, the Court cannot say as a matter of law that "no person has a reasonable expectation of privacy in cell phone location information." (Doc. 69 at 9.)

Still, Securus argues, Hutcheson's use of Securus's LBS platform was not an intrusion that would be "highly offensive to a reasonable person." (*Id*. (quoting *Sofka v. Thal*, 662 S.W.2d 502, 510 (Mo. 1983)).) On this point, the Court agrees with Plaintiffs that the degree to which a reasonable person would find the intrusion offensive is a fact question unsuitable for resolution in a motion to dismiss. The same holds true of whether Securus's participation in Hutcheson's alleged misuse of its platform is itself highly offensive; both issues are properly reserved for the factfinder at a later stage.

Securus argues that Plaintiffs have not alleged a compensable injury because Hutcheson's use of Securus's platform was not an invasion of privacy. (Doc. 69 at 12.) The Court rejects that

argument based on its conclusion that Plaintiffs' allegations are sufficient to support a plausible invasion-of-privacy claim.

Accordingly, the Court will deny Securus's Motion to Dismiss Count IV.

### *Plaintiffs' Negligence Claim*

Lastly, in Count V, Plaintiffs allege that Securus was negligent in allowing Hucheson to misuse its LBS platform. (Doc. 52 at ¶¶ 70-76.) To state a negligence claim under Missouri law, plaintiffs must show: "(1) a legal duty of the defendant to protect the plaintiff from injury, (2) breach of the duty, (3) proximate cause, and (4) injury to the plaintiff." *Nickel v. Stephens Coll.*, 480 S.W.3d 390, 400 (Mo. Ct. App. 2015) (citing *Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2001)).

Although Plaintiffs plead Count V as a basic negligence claim, their only asserted injury is emotional distress, making it, in essence, a claim of negligent infliction of emotional distress. (*See* Doc. 53 at ¶ 75 ("Plaintiffs have suffered damages, including but not limited [to] emotional distress, anxiety and humiliation associated with being illegally monitored and being the subject of the investigation and prosecution of Mr. Hutcheson.").) The Court therefore construes Count V as a claim for negligent infliction of emotional distress.

The Eighth Circuit has held that it is a required element of claims alleging negligent infliction of emotional distress "that the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant." *Couzens v. Donohue*, 854 F.3d 508, 518 (8th Cir. 2017) (quoting *Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2001)); *see also*, *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1055 (E.D. Mo. 2009) ("Nor can plaintiff recover damages for emotional distress inasmuch as he does not allege that he suffers any medically diagnosed condition that resulted from defendant's negligent act.") (citing *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 568 (Mo. banc 2006)).

Securus argues that Count V must be dismissed based on Plaintiff's failure to allege a "medically diagnosed condition." (Doc. 69 at 12.) In response, Plaintiffs cite *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 567-68 (Mo. banc 2006), for the proposition that "evidence of [a plaintiff's] medically or psychologically diagnosable mental or physical condition is irrelevant to the question of whether she suffered 'garden variety' emotional distress"—the sort of distress "that an ordinary person would suffer under the circumstances." (Doc. 70 at 8 (quoting *Dean*, 182 S.W.3d at 564).) But *Dean* and other cases using similar language relate to the discovery or admissibility of evidence of the plaintiff's past medical or psychiatric treatment rather than proving the damages element itself. *See, e.g.*, *Molina v. City of St. Louis*, No. 4:17-CV-2498-AGF, 2020 WL 3489350, at *2 (E.D. Mo. June 26, 2020) ("[T]he defendant was entitled to obtain any pre-claim records regarding the plaintiff's psychological issues but not regarding her physical health, as that information had no bearing on her claims."); *State ex rel. BNSF Ry. Co. v. Neill*, 356 S.W.3d 169, 173 (Mo. 2011) (when a plaintiff has not alleged psychological injury beyond "garden variety" emotional distress, psychiatric records are not subject to discovery in connection with the issue of damages."); *Cunningham*, 182 S.W.3d at 568 n.8 ("[A] plaintiff's claim for 'emotional distress' damages constitutes a waiver of the psychotherapist-patient privilege[.]").

The Court therefore concludes that Missouri law requires evidence of a medically diagnosable injury in this case. Because Plaintiffs do not allege that any of them suffered such an injury, the Court concludes that they have failed to state a viable negligent-infliction-of-emotional-distress claim. Accordingly, the Court will grant Securus's motion to dismiss Count V.

## Conclusion

For the foregoing reasons, the Court concludes that Plaintiffs have alleged sufficient facts to allow the Court to reasonably infer that Securus's LBS platform violated the Fourth Amendment

and Missouri privacy laws.  *See Iqbal*, 556 U.S. at 678.  The Court concludes that Plaintiffs have failed to allege a compensable injury stemming from Securus's alleged negligence.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Securus Technologies, Inc.'s Motion to Dismiss (Doc. 69), is **GRANTED in part**.

**IT IS FURTHER ORDERED** that Count V of Plaintiffs' Second Amended Complaint is **DISMISSED without prejudice.**

Dated this 13th Day of July, 2020.

                                                                         _____
                                                                         JOHN A. ROSS
                                                                         UNITED STATES DISTRICT JUDGE