UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| William T. Cooper, et al., )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>Cory Hutcheson, et al., )<br>Defendants. ) | Case No. 1:17-cv-0073 |

**MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

**I.     Introduction**

On July 13, 2020, the Court denied the motion to dismiss filed by defendant Securus Technologies, LLC ("Securus").[1] To reach this result, the Court embraced the conclusion that "Securus is a willing participant in the joint activity of conducting LBS searches" initiated by Cory Hutcheson, the disgraced former Sheriff for Mississippi County who employed these means to target his political opponents.[2] Memo. & Order, ECF No. 73, at 3 ("MTD Op."). The Court thereby applied the wrong standard for deciding whether a private party can be treated as a state actor for a section 1983 claim. "Under § 1983, a plaintiff must establish not only that a private actor caused a deprivation of constitutional rights," or even that "the private actor willfully participated with state officials" in some joint activity. *Dossett v. First State Bank*, 399 F.3d 940, 951 (8th Cir. 2005). The plaintiff must plead and prove that the private actor and the state "reached a *mutual understanding* concerning the *unlawful objective* of a *conspiracy*." *Id.* (emphases added).

LBS inquiries are not in general unlawful; they "may be useful in in furtherance of

---

[1] Securus converted from a corporation to an LLC in January 2020.
[2] "LBS" stands for "Location Based Services".

legitimate law enforcement investigations and/or emergency situations." Second Amend. Compl. ("SAC"), ECF No. 53, ¶ 22. Moreover, turning a blind eye (SAC ¶ 53) to even unlawful activity is not enough. The private party must literally *conspire* with a state actor to share liability for its illegal conduct. Thus, the proper standard to impose "state actor" status on a private party like Securus requires allegations (and later, proof) that it specifically agreed to participate in the alleged improper "pinging" of Plaintiffs' cell phones. Because Plaintiffs have made no such allegations, the Court should dismiss their section 1983 claim.

Because Securus has filed an answer, it presents its argument through a Rule 12(c) motion for judgment on the pleadings, and acknowledges it is asking the Court to revisit certain conclusions from its July 13 decision. Reconsideration of those views is warranted because the Court misunderstood key arguments and applicable law in a manner that will, if uncorrected, lead to further unnecessary litigation premised upon that misapprehension of settled authority.

**II.    Background**

The Court's previous opinion lays out the basic facts. In summary (and based on the allegations in the SAC), Securus provided LBS data that discloses to a user the approximate location of a targeted cell phone. "'Pinging' a cell phone may be useful in furtherance of legitimate law enforcement investigations and/or emergency situations[,] . . . [h]owever, 'pinging' a cell phone without permission and/or without proper legal process is a violation of a citizen's constitutional rights." SAC, ECF No. 53, ¶¶ 22-23. To "ping" a phone, a user uploads to the Securus platform the target's phone number and certain other information, including documentation (such as a warrant) to provide a record for the user's inquiry. *Id*. ¶¶ 28, 31.

Defendant Hutcheson used Securus' LBS platform when he was a public official working as the Sheriff of Mississippi County. *Id.* ¶ 25. He obtained location information about Plaintiffs'

phones without a proper purpose or authorization. *Id*. ¶¶ 26-27, 40. This is now well known because the Securus platform required that he upload documents memorializing his LBS inquiries, and those documents reveal that he lacked legitimate law enforcement purposes. *Id.* ¶¶ 35-38. Although this record has enabled Plaintiffs (and federal and state law enforcement) to easily identify Hutcheson's wrongdoing, Plaintiffs complain that Securus did not do more—that its software includes few other safeguards against misuse, such as an "in-person review of any particular request." *Id.* ¶¶ 32-33. Based on the absence of such additional precautions, Plaintiffs allege that Securus "intentionally makes it easier for users to obtain LBS." *Id.* ¶ 53.

Importantly, Plaintiffs do *not* allege that Securus had any awareness of or intention regarding any of Hutcheson's particular unlawful uses of its LBS platform. Plaintiffs also do *not* allege that Hutcheson and Securus reached a mutual understanding concerning any unlawful objective. Moreover, this Court may take judicial notice that Hutcheson has pleaded guilty to defrauding Securus by representing that his LBS inquiries were lawful. *See* RJN Exs. A-B.[3]

Plaintiffs assert that Securus is liable under 42 U.S.C. § 1983, for an alleged violation of their Fourth Amendment rights against unreasonable search or seizure, and for an invasion of privacy under Missouri law. *Id.* ¶¶ 48-57, 64-76. Securus moves for judgment on the section 1983 claim because Securus is not a state actor that can be liable under the referenced statute.

### III.  Standard of Review

The standard for judgment on the pleadings is "the same standard as . . . [for] a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Packard v. Darveau*, 759 F.3d 897, 900 (8th Cir. 2014). "The complaint must contain sufficient factual matter, accepted as true, to state a

---

[3] The Court can properly consider the attached conviction records in deciding a Rule 12(c) or 12(b)(6) motion. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079-80 (8th Cir. 1999).

claim to relief that is plausible on its face." *McIvor v. Credit Control Servs.*, 773 F.3d 909, 913 (8th Cir. 2014). The plausibility standard requires judgment of dismissal if "[t]he facts pleaded . . . do not permit [a court] to infer more than the mere possibility of misconduct." *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 842 (8th Cir. 2014) (citation omitted) (affirming dismissal because allegations did not show defendant knowingly assisted the alleged breach of duty).

A Rule 12(c) motion is timely "so long as [it] do[es] not delay trial," *Bootheel Ethanol Investors, L.L.C. v. Semo Ethanol Corp.*, 2012 U.S. Dist. LEXIS 19711, *1 (E.D. Mo. Feb. 16, 2012). Securus was first served only 10 months ago, and the Court has not yet issued a scheduling order setting discovery deadlines or a date for trial. ECF Nos. 54, 72. Indeed, with the ongoing COVID-19 pandemic, counsel for the parties have yet to even engage in their Rule 26(f) conference or propound any discovery requests or disclosures.

In addressing the present motion, the Court may reconsider its previous denial of Securus' motion to dismiss. "When a district court is convinced that it incorrectly decided a legal question in an interlocutory ruling, the district court may correct the decision to avoid later reversal." *Lovett v. Gen. Motors Corp.*, 975 F.2d 518, 522 (8th Cir. 1992). In *Lovett*, the Eighth Circuit affirmed a district court's decision to dismiss a claim for lack of standing even though the trial court had originally decided that issue in the plaintiff's favor when it denied an earlier motion to dismiss.

Accordingly, courts in this district remain open to revising interlocutory decisions that may be in error. *See, e.g.*, *Roeslein & Assocs. v. Elgin*, No. 4:17 CV 1351 JMB, 2019 U.S. Dist. LEXIS 6981, at *23 (E.D. Mo. Jan. 15, 2019) (partially dismissing claims the court had earlier declined to dismiss); *Level One Techs., Inc. v. Penske Truck Leasing Co., L.P.*, No. 4:14 CV 1305 RWS, 2018 U.S. Dist. LEXIS 80391, at *4 (E.D. Mo. May 14, 2018) (granting summary judgment on theory the court had previously rejected). In *Acosta v. MEMC Elec. Material, Inc.*, the court had

denied a motion to dismiss, and then revised that decision because it recognized that its previous decision "was based on the Court's erroneous reliance" on a particular precedent.  No. 4:08CV1991 HEA, 2010 U.S. Dist. LEXIS 110823, at *2 (E.D. Mo. Oct. 18, 2010).

In addition, a court may reconsider if its earlier opinion "misunderstood a party, . . . [or] would be rendered incorrect because of a 'controlling or significant change in law' since the issues were submitted to the Court.'"  *Trickey v. Kaman Indus. Techs. Corp.,* 2011 U.S. Dist. LEXIS 56864, 2011 WL 2118578, at *2 (E.D. Mo. May 26, 2011).

## IV.     Argument

### A.     Securus is not a state actor for purposes of Plaintiffs' section 1983 claims.

A private entity like Securus can be liable under section 1983 only if it is properly "characterized as a state actor," which is possible in just three ways.  *See* MTD Op. at 3-4 (summarizing standards).  In moving to dismiss this claim earlier, Securus contended that Plaintiffs had not alleged Securus performed an exclusive public function and had also not alleged Securus willingly engaged in joint action.  Mot. to Dismiss ("MTD"), ECF No. 69, at 5.[4]  The Court did not decide the first issue.  On the second, it concluded that "Securus was a 'willful participant in joint activity with the State or its agents.'"  MTD Op. at 4.  That conclusion misapprehends a critical feature of the governing standard: Plaintiffs must allege that "Securus engaged in deliberate and willful *conspiracy . . . to violate their rights.*"  MTD at 5 (emphasis added).

### 1.    State-actor status depends on an agreement to engage in specific unlawful conduct.

That Securus had an agreement with the state to provide LBS services cannot be enough to

---

[4] Plaintiffs have not disputed that the third mode of imputing state action to a private person, "pervasive entwinement," MTD Op. 3, does not apply to Securus' LBS services.  *See* Memo. in Opp. to Mot. to Dismiss, ECF No. 70, at 3-5 ("MTD Opp.").

5

transform this private enterprise into a state actor.  The Eighth Circuit and the Supreme Court have each held that for a "willful participation" claim, the showing needed is that the private person agreed to participate specifically in the state actions that violated rights.

- In *Adickes v. S.H. Kress & Co.*, a plaintiff claimed a department store's denial of service violated her Fourteenth Amendment rights.  398 U.S. 144, 150 (1970).  The Supreme Court said the store could face section 1983 liability if it and the police "*reached an understanding to deny Miss Adickes service* in the Kress store, or to cause her subsequent arrest because she was a white person in the company of Negroes."  *Id*. at 151-52 (emphasis added).  The Eighth Circuit later pointed out the significance of these words: the "understanding" was to take the action that violated rights, such as "arrest because of" a racially discriminatory reason.  *Dossett*, 399 F.3d at 951-52.

- As *Dossett*, further explained, "a plaintiff must establish not only that a private actor caused a deprivation of . . . rights, but that the private actor . . . and [state officials] reached a mutual understanding concerning the unlawful objective of a conspiracy." 399 F.3d at 951.  The defendant could be liable only because, the court emphasized, it "willfully participated with school officials to terminate [plaintiff] *in retaliation for her exercise of First Amendment rights*."  *Id.* at 952.

- *Steele v. City of Bemidji*:  "[T]o be considered [a] state actor, a private party must have reached an understanding' with state officials *to deny civil rights*."  257 F.3d 902, 906 (8th Cir. 2001) (citing *Adickes*).

- *DuBose v. Kelly*:  "The key inquiry is whether the private party was a willful participant *in the corrupt conspiracy*."  187 F.3d 999, 1003 (8th Cir. 1999) (emphasis added).

- In *White v. Walsh*, the Eighth Circuit noted that it had "adopted the rationale of the Seventh Circuit in *Sparkman v. McFarlin*, 601 F.2d 261 (7th Cir. 1979) (en banc)."  649 F.2d 560, 561 (8th Cir. 1981).  That rationale: "It is not sufficient to allege that the defendants merely acted in concert

6

or with a common goal. There must be allegations that the defendants had directed themselves toward an unconstitutional action." 601 F.2d at 268.

- *Magee v. Trustees of the Hamline University*: "To be liable under § 1983, a private actor must be a willful participant in joint activity with the State *in denying a plaintiff's constitutional rights*." 747 F.3d 532, 536 (8th Cir. 2014) (emphasis added).

- *Meier v. City of St. Louis*: The police department and the defendant "shared a mutual understanding *concerning the truck*." 934 F.3 824, 830 (8th Cir. 2019) (emphasis added).

- *Young v. Harrison*: The circuit affirmed a judgment for private defendants because "Young has not presented any evidence that Adcock and the police had a meeting of the minds *with regard to violating Young's constitutional rights*." 284 F.3d 863, 870 (8th Cir. 2002) (*per curiam*).

Other circuits are in agreement. *See, e.g.*, *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983) (bank not liable under section 1983 for giving records to FBI without warrant because to hold them state actors, they "must at least share the general conspiratorial objective"); *Stagman v. Ryan*, 176 F.3d 986, 1003 (7th Cir. 1999) ("[T]o establish joint action, a plaintiff must demonstrate that the public and private actors shared a common, unconstitutional goal. . . . [A] plaintiff must establish that a conspiracy, or an understanding, to violate the plaintiff's constitutional rights existed between the public and private actors."); *Annunziato v. The Gan, Inc.*, 744 F.2d 244, 252-53 (2d Cir. 1984) (defendant may not be held liable vicariously for any constitutional violation caused by the government, "merely because it innocently executed a contract" with the government).

> **2. Securus agreed to provide LBS services only in general, not to participate in an unlawful search to obtain Plaintiffs' cell phone location information.**

The Court's previous decision deviated from the above-described, governing law, and thus includes no assessment of whether Securus agreed to participate in any violative conduct, or even

whether it was aware of (even the possibility of) constitutional violations.  Without consideration of this required element, the Court concluded that Securus was a state actor simply based on the allegation that "Securus is a willing participant in the joint activity of conducting LBS searches," as demonstrated by the charge that Securus "sells a product designed to be used in tracking individuals for criminal investigation."  MTD Op. at 4.

That Securus operated under a contract with the Mississippi County Sheriff's Office, and even that its LBS business was largely with government agencies does not satisfy the exacting standard set forth in *Adickes* and its progeny.  Eighth Circuit cases firmly establish that "[e]ven if . . . private contractors only perform public contracts, their acts are not those of the government." *Gomez v. N. Dak. Rural Dev. Corp.*, 704 F.2d 1056, 1058 (8th Cir. 1983); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) ("Acts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."); *Amisi v. Melick*, 2017 U.S. Dist. LEXIS 71456, *11-*12 (D.S.D. May 8, 2017) ("Under well-established § 1983 principles, the fact that a private entity either contracts with a state or performs a public function, does not make the conduct at issue 'state action.'").

Nor is it sufficient that Securus contracted to provide LBS, which Hutcheson employed as the vehicle for his alleged unlawful inquiries.  Plaintiffs admits LBS can be used for entirely lawful purposes:  "'Pinging' a cell phone may be useful in furtherance of legitimate law enforcement investigations."  SAC ¶ 22.  The Court also acknowledged that law enforcement officials can legitimately engage in LBS searches in appropriate circumstances.  *See* MTD Op. at 6 (distinguishing between a lawful "search" and a "warrantless search of LBS data [that] could amount to a Fourth Amendment violation").  Hutcheson allegedly "skirt[ed] the requirement to

8

submit authorizing documentation," MTD Op. at 1—a requirement that was in place because a legitimate LBS would have such documents.

Thus, Securus provided its LBS platform for use in legitimate criminal investigations, and was a "willing participant" only in such *lawful*, constitutionally permitted activity. Under the proper standard, this is not enough to make Securus a state actor, and neither the allegations nor any plausible inferences from them disclose any agreement by Securus to participate in unconstitutional activity. Hutcheson allegedly misused the provided technology to obtain LBS data about the location of Plaintiffs' phones in an unconstitutional manner. But Plaintiffs do not allege Securus had an understanding to participate in that conspiracy. In fact Hutcheson has been convicted of fraud precisely because he made false statements to Securus about his LBS inquiries. *See* RJN Exs. A-B. The two defendants plainly did not conspire.

This line—between agreeing on conduct that would ordinarily be lawful, and agreeing on a constitutional violation—runs throughout the section 1983 cases cited above, and many others. For example, in *Fonda*, the bank gave account records to an FBI officer, at the officer's request— just as Securus enabled Hutcheson with technology to access LBS data. That provision of a means to gather information was not, in itself, unconstitutional. The bank was not a state actor for section 1983 purposes because the constitutional problem was that the officer was actually obtaining the records for an illegitimate purpose, a campaign to retaliate against protected speech, and the bank had not agreed to engage in that. 707 F.2d at 438. Just so here, Plaintiffs do not allege any agreement by Securus to participate in an illegitimate LBS search.[5] Plaintiffs' claim requires an

---

[5] Because *Fonda* involved bank account data, in which there is no general Fourth Amendment privacy interest, what made the *Fonda* data request unconstitutional was the FBI officer's retaliatory motive; whereas here Plaintiffs claim the LBS acquisition was unconstitutional because Hutcheson did not have a warrant (or other valid authorization). That difference is immaterial to

9

allegation of a "'meeting of the minds' . . . to knowingly attempt to accomplish an alleged wrongful purpose," *Fonda*, 707 F.2d at 439, and that charge is missing.

As another example, in *Young*, a hotel called police to ask for their help evicting a troublesome guest. The police allegedly violated the guest's Fourth Amendment rights in the process. But the hotel was not treated as a state actor—though it surely agreed with the goal of removing the guest from the premises—because there was no evidence of "a meeting of the minds with regard to violating Young's constitutional rights." 284 F.3d at 870.

*Meier*, from which the district court drew the requirement of a "close nexus" as an additional element for all three types of state-actor status, MTD Op. 4, further illustrates the point. The evidence showed a police department had a policy of unconstitutionally detaining vehicles for warrantless searches. 934 F.3d at 828. A towing company held the plaintiff's truck precisely so that the police could conduct such an unconstitutional search. *Id.* at 830. The Eighth Circuit emphasized that the police "intended Doc's Towing to detain Meier's truck until it obtained the information it was looking for," and "Doc's Towing understood SLMPD's intent and acted accordingly." *Id.* In addition, the towing company "willfully participated in SLMPD's policy," *id.* which was, again, a *policy* of conducting unconstitutional searches. Yet again, the understanding and agreement necessary for state-actor liability was that the private company agreed to participate in the unconstitutional activity.

*Holloway v. Ameristar Casino St. Charles, Inc.*, cited by Plaintiffs as an example of holding a private entity liable under section 1983 (MTD Opp. at 5), is particularly instructive. The court declined to dismiss a section 1983 claim against a casino and its security guard because the plaintiff

---

the status of the private actor, which in both cases agreed to provide information but did not agree to provide information improperly.

10

specifically alleged how the guard acted with a police officer in violating her civil rights. 2008 U.S. Dist. LEXIS 21673, *10 (E.D. Mo. Mar. 19, 2008). The court later granted the defendants summary judgment on the section 1983 claim. 2010 U.S. Dist. LEXIS 2098 (E.D. Mo. Jan. 12, 2010). The facts showed that the police officer was regularly stationed at the casino, tasked by a state agency specifically to keep the peace at the casino, and that it was customary for casino security guards to assist those police details. *Id.* at *9-*13. But the court recognized that for section 1983 liability of the "willful participation" type, a plaintiff must show "defendants 'directed themselves toward an unconstitutional action by virtue of a mutual understanding.'" *Id.* at *29 (quoting *DuBose*, 187 F.3d at 1003). The plaintiff could not make that showing, because the casino's security guard was "unaware of the circumstances supporting the [unconstitutional] arrest." *Id.* at *30.

The *Holloway* plaintiff alleged the security guard's willful participation specifically in the violation of her rights, but was unable to prove that participation. Here, Plaintiffs have not even taken the first step of alleging that Securus conspired to knowingly violate their rights.

### 3. The SAC affirmatively precludes a finding that Securus willfully participated in the alleged constitutional violation.

As noted above, even Plaintiffs concede that an LBS inquiry by the government is not *per se* unlawful. Accepting for purposes of argument the Court's conclusion that LBS constitutes a search, a government official can thus legitimately conduct such a search in a number of circumstances. Consequently, as explained above, Securus may be deemed a state actor under the "willful participation" doctrine only if it *agreed* with an official to conduct an *unconstitutional* search—which would have to be one for which the government official lacked a warrant and lacked any justification for proceeding without a warrant.

11

Plaintiffs' SAC establishes that Securus had no such agreement because Securus expected its law-enforcement customers to engage only in lawful searches. As the SAC puts it, "[a] user is *supposed to* upload a document to the Securus platform *identifying and confirming the legal basis* on which the 'ping' is based." SAC ¶ 31 (emphases added). A user can only be "supposed to" upload documents "identifying and confirming the legal basis" for using the LBS platform because Securus understood that officials would make only legal requests. Indeed, if an officer submits an unlawful request, by cheating the system and uploading irrelevant or even fraudulent documents to support the LBS search, Securus' system will preserve evidence of that misuse to enable criminal prosecution of the officer and exclusionary or challenges by any targets of the abuse.

Meanwhile, Plaintiffs allege that "Securus' platform and software provide no safeguards to ensure that any particular 'ping' request is legitimate," and that "Securus provides no further in-person review of any particular request." *Id.* ¶¶ 32-33. Even these allegations establish that Securus had an understanding—though apparently mistaken in this instance—that the Mississippi County Sherriff officials would use the LBS platform for only lawful purposes in support of their law enforcement activities. And they conclusively establish that Securus had no awareness that Hutcheson was conducting unlawful inquiries, and thus did not have an understanding with him to support an unconstitutional search.

The allegation that Securus "intentionally makes it easier for users to obtain LBS," "[i]n order to make LBS more valuable," is not to the contrary. SAC ¶ 53. That motive and strategy are hardly improper; every vendor wants to make its services more valuable by making them user friendly. What Plaintiffs have not alleged is that Securus intended to make it easier or possible for users to obtain LBS improperly based on an understanding or conspiracy with Hutcheson to violate the law. Nor is it plausible that Securus forbore from reviewing documents in order to help officers

12

engage in unauthorized LBS inquiries. That notion—that Securus willingly set itself up as a tool for widespread constitutional violations (while assuring a record of the fraud would be retained)—is so far-fetched that it requires allegations beyond just that Securus wanted to make its service easy to use. As the Supreme Court has explained, if the alleged conduct is "not only compatible with, but indeed was more likely explained by, lawful . . . free-market behavior," it does not "plausibly suggest an unlawful agreement." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

There is an awkward irony here at the heart of Plaintiffs' allegations. Plaintiffs are troubled that Securus did not assess whether each LBS inquiry was proper. *See* MTD Opp. at 7-8. But as far as section 1983 is concerned the question is whether Securus, itself, was acting under color of law. The responsibility to assess whether a search is lawful under the Fourth Amendment rests, in the first instance, with the government actor undertaking the search. By declining to review those determinations, Securus made itself less like a state actor, not more.

### 4. Securus was not performing a traditional government function.

In its original decision, the Court declined to decide Securus' argument that it cannot be a state actor under the "traditional government function" concept. Securus renews that argument here for the sake of completeness, and it respectfully requests that on this Rule 12(c) motion the Court continue to consider the arguments Securus made on this point in its Rule 12(b)(6) motion.

In brief, a private party can be treated as a state actor in this manner only if it performs a function that "has been traditionally the *exclusive* prerogative of the state." *Gomez*, 704 F.2d at 1059. "That a private entity performs a function that serves the public does not make its act the acts of the state." *Id.* "[T]he activities that have been held to fall within the state's exclusive preserve for purposes of the public function test are few and far between." *Amisi*, 2017 U.S. Dist. LEXIS 71456, at *12 (citation omitted). Plaintiffs characterizes Securus' service as "searching for and seizing information pursuant to a criminal investigation." MTD Opp. 4. But gathering

13

and providing information, including for investigations, is hardly an exclusive governmental function. Private entities do it all the time. *See, e.g.*, 15 U.S.C. §§ 1681u, 1681v (requiring credit bureaus to provide information to FBI and for counterterrorism investigations).

### B. Securus had no policy of allowing unconstitutional LBS inquiries.

Even if Securus could be treated as a state actor for section 1983 purposes, the SAC omits a further key element for a section 1983 claim: a policy to engage in the alleged unconstitutional conduct.

Under the familiar *Monell* doctrine, section 1983 does not allow vicarious liability; an organization is not liable for the isolated unconstitutional acts of its employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). The Eighth Circuit has held that this principle applies with equal force when a private corporation is being treated as a state actor; "a corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (citing *Monell*). "[T]o prove a policy, custom or action, [plaintiffs] must show a continuing, widespread, persistent pattern of unconstitutional misconduct by . . . employees; deliberate indifference to or tacit authorization of such conduct by [the company's] policymaking officials after notice to the officials of that misconduct; and . . . that the custom was the moving force behind the constitutional violation." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590-91 (8th Cir. 2004). At the pleading stage, Plaintiffs must at least "allege facts which would support the existence of an unconstitutional policy or custom." *Id.* at 591.

The SAC is, of course, devoid of such allegations. Securus' policy, according to the SAC, is that "[a] user is supposed to upload a document . . . confirming the legal basis on which the 'ping' is based." SAC, ¶ 31. The SAC does not suggest Securus engaged in a "widespread . . .

pattern" of unconstitutional LBS inquiries. It identifies only the activities of Hutcheson, which so far as the SAC reveals were an extreme outlier, and it does not allege that any other user manipulated the Securus system as Hutcheson did. The SAC levels the conclusory allegation that Securus acted with "indifference to the rights of Plaintiffs and others." SAC, ¶ 57. But alleging indifference is not enough for Plaintiffs' section 1983 claim. According to the Eighth Circuit, the claim requires "deliberate indifference by [the company's] policymaking officials after notice to the officials of that misconduct." 388 F.3d at 591. Plaintiffs do not so much as hint that Securus officials received any notice that Hutcheson was misusing the LBS system. To the contrary, their allegations indicate that there was no in-person review of Hutcheson's LBS inquiries, and thus that officials at Securus did not receive any warning. SAC, ¶ 33.

Plaintiffs' allegations show only that Securus trusted government agencies to use its LBS platform in accordance with the law, and Hutcheson abused that trust. Those facts cannot establish a policy, practice, or custom at Securus to accept and fulfill unconstitutional LBS requests.

**V.     Conclusion**

At bottom, Securus is—as far as section 1983 is concerned—in the same position as a credit bureau, a marketing data company, a news aggregator, or any other company that collects and sells information. Contracting to sell information to the government does not make a company a state actor. The government might misuse its access to information, by conducting unconstitutional searches, by engaging in discriminatory or retaliatory investigations in violation of the First or Fourteenth Amendments, or in other ways. Under the precedents that Securus cited in its motion to dismiss and here, a contractor does not incur section 1983 liability unless it agreed *to the misuse*.

For these reasons, Securus respectfully asks the Court to grant judgment on the pleadings dismissing the section 1983 claim against Securus.

/s/ Adam R. Fox

Adam R. Fox (admitted *pro hac vice*)
Gabriel Colwell (admitted *pro hac vice*)
Marisol C. Mork (admitted *pro hac vice*)
Squire Patton Bogs (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone: (213) 624-2500
Facsimile: (213) 623-4581
adam.fox@squirepb.com
gabriel.colwell@squirepb.com
marisol.mork@squirepb.com

Shawn T. Briner, #MO47286
Briner Law Group
424 S. Woods Mill Road, Suite 330
Chesterfield, Missouri 63017
Telephone: (314) 478-7227
Facsimile: (314) 448-4300
shawn.briner@brinerlaw.com

*Attorneys for Defendant Securus Technologies, LLC f/k/a Securus Technologies, Inc.*

**Certificate of Service**

The undersigned certifies that on September 1, 2020 the foregoing was electronically filed with the Clerk of Court for service on all attorneys of record via the Court's electronic filing system.

/s/ Adam R. Fox