**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM T. COOPER, JAY R. HOLCOMB, JEFFERY D. JOHNSON, JEREMY S. STOELTING, and JAMES D. PATTON,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 1:17-cv-00073** |
| **V.** | ) ) | **Dist. Judge John A. Ross** |
| **CORY HUTCHESON,** | ) ) ) | |
| **and** | ) ) | |
| **SECURUS TECHNOLOGIES, INC.** | ) ) ) | |
| **Defendants.** | ) ) | |

**DEFENDANT SECURUS TECHNOLOGIES, LLC'S**
**MEMORANDUM IN SUPPORT OF ITS**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

TABLE OF CONTENTS

**PAGE**

I.      Introduction.................................................................................................... 1

II.     Factual Background ........................................................................................ 2

III.    Summary Judgment Standard ........................................................................ 4

IV.     Analysis........................................................................................................... 4

        A.      Plaintiffs' Invasion Of Privacy Claim Against Securus Fails as a Matter of
                Law. ..................................................................................................... 4

                1.      Securus Did Not "Intrude" Upon Plaintiffs' Seclusion. ............................ 5

                2.      Securus' Actions Were Not Highly Offensive To A Reasonable
                        Person.................................................................................................. 8

        B.      Plaintiffs' Section 1983 Claim Against Securus Fails As A Matter Of Law.......... 8

                1.      Securus Did Not Violate Clearly Established Constitutional Rights.......... 9

                2.      Securus Did Not Act Under Color Of State Law..................................... 12

        C.      Lack Of Proximate Causation Between The Alleged Misconduct By
                Securus And Plaintiffs' Alleged Injuries Requires Entry Of Summary
                Judgment. ............................................................................................ 14

V.      Conclusion .................................................................................................... 15

TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................4

*Blakeney v. City of Pine Lawn*,
  2020 U.S. Dist. LEXIS 141472 (E.D. Mo. Aug. 7, 2020) ......................................7

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
  531 U.S. 288 (2001) ..........................................................................................13

*Brousseau v. Haugen*,
  534 U.S. 194 (2004) (per curiam) .....................................................................10

*Carpenter v. United States*,
  138 S. Ct. 2206 (2018) ............................................................................... *passim*

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................4

*Connick v. Thompson*,
  563 U.S. 51 (2011) ............................................................................................13

*Cook v. City of Bella Villa*,
  582 F.3d 840 (8th Cir. 2009) ...........................................................................8, 9

*Durrell v. Tech Elecs., Inc.*,
  2016 U.S. Dist. LEXIS 157689 (E.D. Mo. Nov. 15, 2016) ....................................8

*F.D.I.C. v. Bell*,
  106 F.3d 258 (8th Cir. 1997) ..............................................................................4

*Fletcher v. Price Chopper Foods of Trumann, Inc.*,
  220 F.3d 871 (8th Cir. 2000) ...........................................................................5, 7

*Gilbert v. Feld*,
  788 F. Supp. 854 (E.D. Pa. 1992) .....................................................................14

*Haley v. Wascom*,
  No. 5:13-cv-232, 2015 U.S. Dist. LEXIS 109600 (N.D. Ohio Aug. 19, 2015) ......................14

*Halley v. St. Joseph R., L., H. & P. Co.*,
  115 Mo. App. 652 (1906) ..................................................................................15

*Hastings v. Stetson*,
    126 Mass. 329 (1878) (Gray, C.J.)........................................................................14

*Hicks v. Sullivan*,
    2020 U.S. Dist. LEXIS 70437 (C.D. Cal. Feb. 21, 2020)........................................6

*Katz v. United States*,
    389 U.S. 347 (1967)................................................................................................9

*Kisela v. Hughes*,
    138 S. Ct. 1148 (2018)........................................................................................7, 9

*Kutilek v. Union Pac. R.R.*,
    454 F. Supp. 2d 871 (E.D. Mo. 2006)..................................................................14

*Mackey v. Belden, Inc.*,
    2021 U.S. Dist. LEXIS 145000 (E.D. Mo. Aug. 3, 2021) (Ross, J.) ......................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)................................................................................................4

*Maytag v. Cummins*,
    260 F. 74 (8th Cir. 1919) ......................................................................................14

*McCoy v. City of Monticello*,
    342 F.3d 842 (8th Cir. 2003) ................................................................................12

*Meier v. City of St. Louis*,
    934 F.3d 824 (8th Cir. 2019) ..................................................................................9

*Meuse v. Stults*,
    421 F. Supp. 2d 358 (D. Mass. 2006) ..................................................................14

*O'Donnell v. United States*,
    891 F.2d 1079 (3d Cir. 1989)..................................................................................5

*Philips v. Citimortgage, Inc.*,
    430 S.W.3d 324 (Mo. Ct. App. 2014)......................................................................5

*Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*,
    64 F.3d 1202 (8th Cir. 1995) ..................................................................................4

*Sanders v. Daniel Int'l Corp.*,
    682 S.W.2d 803 (Mo. 1984) ..................................................................................5

*Smith v. Maryland*,
    442 U.S. 735 (1979)................................................................................................9

*Sofka v. Thal*,
 662 S.W.2d 502 (Mo. 1983) .................................................................................5

*St. Anthony's Med. Ctr. v. H.S.H.*,
 974 S.W.2d 606 (Mo. Ct. App. 1998)..............................................................5, 7

*Szabla v. City of Brooklyn Park*,
 486 F.3d 385 (8th Cir. 2007) .......................................................................12, 13

*United States v. Jackson*,
 2011 U.S. Dist. LEXIS 122998 (E.D. Mo. Oct. 25, 2011) ...................................8

*United States v. Jones*,
 606 F.3d 964 (8th Cir. 2010) ...............................................................................8

*United States v. Knotts*,
 460 U.S. 276 (1983) .......................................................................................6, 11

*United States v. McCaster*,
 193 F.3d 930 (8th Cir. 1999) ...............................................................................9

*United States v. Skinner*,
 690 F.3d 772 (6th Cir. 2012) .........................................................................6, 11

*United States v. Zodhiates*,
 901 F.3d 137 (2d Cir. 2018)..................................................................................9

*White v. McKinley*,
 519 F.3d 806 (8th Cir. 2008) ..............................................................................13

*Y.G. v. Jewish Hosp. of St. Louis*,
 795 S.W.2d 488 (Mo. App. 1990) ......................................................................15

*Young v. City of Little Rock*,
 249 F.3d 730 (8th Cir. 2001) ..............................................................................13

*Young v. Mercantile Trust Co. Nat'l Assoc.*,
 552 S.W.2d 247 (Mo. App. 1977) ......................................................................15

**Statutes**

18 U.S.C. § 2702(b)(8) ....................................................................................................3

18 U.S.C. § 2702(c)(4).....................................................................................................3

42 U.S.C. § 1983.................................................................................................. *passim*

Federal Rules of Civil Procedure
 Rule 56(a)........................................................................................................................4

**Other Authorities**

Restatement (Second) of Torts § 652B ........................................................................5, 6

U.S. Const. amend. IV ............................................................................................ *passim*

## I.      Introduction

In 2014, Cory Hutcheson, a jail administrator in the Mississippi County Sheriff's Department ("MCSO"), used a novel technology to attempt to locate five Missouri Highway Patrol Officers at the direction of the Sheriff. The MCSO had access to this technology, called Location Based Services ("LBS") by contracting with Securus Technologies, LLC ("Securus"). LBS enabled Hutcheson to request the location of—or "ping"—the troopers' cell phone numbers, obtaining approximate location information based on the cell tower(s) with the strongest signal to their phones. Although Securus had a policy requiring the MCSO and its registered LBS users to obtain and upload written legal authorization for each ping, Hutcheson submitted an affidavit falsely asserting that he had such authorization for each ping of Plaintiffs' phones.

Hutcheson's LBS pings did not consistently yield results and the record fails to reveal whether he received any location information in response to his pings of Plaintiffs' phone numbers. Even if he had, such "cell-site location information ('CSLI')" is such that "the capability to pinpoint a phone's location within 50 meters" is the best for which one can hope, even in highly concentrated urban areas. *Carpenter v. United States*, 138 S. Ct. 2206, 2211 & 2219 (2018). In Mississippi County, Missouri, a decidedly remote and rural area, successful pings yielded location information approximately half a mile away from the target phone's actual location. Nevertheless, the five state troopers Hutcheson targeted commenced this lawsuit in 2017 after he was elected sheriff of Mississippi County. Hutcheson was later indicted for and pleaded guilty in 2018 to wire fraud and identity theft for his abuse of the LBS platform.

In October 2019, Plaintiffs added Securus as a defendant to their lawsuit. They assert Securus violated Missouri privacy law as well as the Fourth Amendment by intruding upon their seclusion, despite the record's failure to identify even a single ping by Hutcheson revealing them in a private location, let alone that Securus obtained CSLI when Hutcheson pinged their phones. At bottom, Plaintiffs ask the Court to hold Securus liable for its lack of awareness that Hutcheson attempted to use its LBS platform based on lies and deceit, rather than for any actual conduct or injury caused by the company. This court should therefore enter summary judgment for Securus.

## II.      Factual Background

Securus is a private company that provides communications systems and related services to law enforcement agencies and correctional facilities. SUMF at ¶ 1. In or about 2005, Securus contracted with Mississippi County to provide such services. *Id*. Beginning in April 2014, Securus began providing LBS to MCSO, enabling it to ping a cell phone number and obtain the CSLI associated with the most proximate cell tower(s). *Id*. at ¶¶ 1-2. Securus acted merely as a conduit between the wireless phone carriers and the LBS user, and no employee at Securus ever received the requested CSLI. *Id*. at ¶ 2. CSLI does not disclose a cell phone's location, and instead provides the distinct location information associated with one or more proximate cell towers. In highly concentrated urban areas, LBS might, at best, offer "the capability to pinpoint a phone's location within 50 meters." *Carpenter*, 138 S. Ct. at 2219; *see also id.* at 2225 (Kennedy, J., dissenting) (observing that, at the time relevant to this case, the technology provided CSLI approximating a cell phone's location "within an area covering between around a dozen and several hundred city blocks"). "In rural areas," with fewer cell towers, the location information "can be up to 40 times more imprecise." *Id.* at 2225 (Kennedy, J. dissenting); *see also* SUMF at ¶ 2.

Despite its limitations, LBS has important law enforcement functions. SUMF at ¶ 2. Securus thus offered the technology to its contracting law enforcement partners, including MCSO, governed by a written policy that obligated them to "comply with all privacy, consumer protection, marketing, data security, and other relevant laws, regulations and government guidelines." *Id*. at ¶ 3. The Securus LBS software also obligated MCSO's registered users to upload "an official document giving permission to look up the location on [the] phone number requested" and to check a box certifying that they have done so. *Id*. In 2014, MCSO authorized Hutcheson to use LBS through MCSO's contract with Securus. *Id*. Hutcheson affirmed receipt and acceptance of Securus' policy, and certified for every one of his pings that he had uploaded a document establishing his legal authority to obtain the information. *Id*. at ¶ 4.

Hutcheson used the LBS platform to ping the phone numbers of Plaintiffs Cooper, Johnson and Stoelting once each on October 12, 2014, apparently to find out if any of them were in the vicinity of a murder victim on a levy in Mississippi County. *Id*. at ¶ 5. Hutcheson pinged Plaintiff

Patton's phone number twice, once on October 12, 2014—for the same reason as the other men—and once on October 30, 2014, arising from concerns that Plaintiff Patton was undermining a Sheriff's investigation. *Id*. Hutcheson pinged Plaintiff Holcomb's phone number 62 times between July 22, 2014 and December 2, 2014, both because the Sheriff distrusted him and wanted to "keep tabs on where he was"—particularly as he was driving on a long public highway—and because he was "not getting location information back" on his pings. *Id*. at ¶¶ 5-6.

Each time Hutcheson pinged the location information associated with Plaintiffs' phone numbers, he uploaded a notarized Affidavit and Statement of Consent to Provision of Location Based Information, swearing that he either had the target's consent or that exigent circumstances justified the release of location information pursuant to 18 U.S.C. § 2702(b)(8) and (c)(4) because the target was "missing, incapacitated or in immediate danger of death or serious physical injury." *Id*. at ¶ 4. Each time, he actually lacked such authority, as disclosed four years later when he pleaded guilty to wire fraud and identity theft. *Id*. At the time, Securus had no knowledge of Hutcheson's deception. *Id*. Plaintiffs also lacked any contemporaneous awareness that Hutcheson had pinged their cell phone numbers. *Id*. at 7.

Many efforts Hutcheson made to ping the locations associated with Plaintiffs' cell phones were either unsuccessful, and thus returned no location data, or were performed when Plaintiffs were known to be driving on public streets and could have been visually surveilled with sufficient manpower to do so. *Id*. at ¶¶ 5-6. Hutcheson testified his belief that he vaguely recalls obtaining some location information from at least some of the pings of the Plaintiffs, but he could not recall which or how many actually returned location information. *Id*. at ¶ 6. Plaintiffs also do not recall their actual locations when Hutcheson attempted to access the CSLI associated with their phone numbers, and thus cannot rule out that they were in public locations. *Id*. at ¶ 7.

Given this background, Plaintiffs do not contend that any acts by Hutcheson using the Securus LBS platform caused them any direct injury. *Id*. at ¶ 9. Instead, Plaintiffs' only alleged injuries—of emotional distress, anxiety and embarrassment—derive from their asserted belief that some third parties unknown to them expressed on social media the view, during the prosecution

of Sheriff Hutcheson, that his use of LBS may have been justified. *Id.* Plaintiffs concede that Securus was not involved in these online, third-party acts, which occurred years after Hutcheson attempted to ping their phone numbers. *Id.*

## III.   Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In such circumstances, summary judgment is favored "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Accordingly, "[m]ere arguments or allegations are insufficient to defeat a properly supported motion for summary judgment . . . ." *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997). Indeed, a "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *Rolscreen Co. v. Pella Prods. of St. Louis, Inc*., 64 F.3d 1202, 1211 (8th Cir. 1995).

## IV.   Analysis

Plaintiffs assert two counts against Securus.[1] Count IV asserts that Securus "intru[ded] upon the seclusion, solitude and private affairs of Plaintiffs" in violation of Missouri law by providing the LBS platform used by Hutcheson to attempt to locate Plaintiffs' cell phones. Count II asserts a violation 42 U.S.C. § 1983, premised upon the notion that Securus violated clearly established Fourth Amendment rights by willfully and jointly participating with Hutcheson in his LBS use for the same purpose. As explained below, the record fails to support either Count.

### A.   Plaintiffs' Invasion Of Privacy Claim Against Securus Fails as a Matter of Law.

A claim for invasion of privacy for the unreasonable intrusion upon the seclusion of another requires proof of: "(1) the existence of a secret and private subject matter; (2) a right in the plaintiff to keep that subject matter private; and (3) the obtaining by the defendant of information about

---

[1] The Court dismissed Count V, negligence, on the pleadings (ECF 53).

that subject matter through unreasonable means." *St. Anthony's Med. Ctr. v. H.S.H.*, 974 S.W.2d 606, 609-10 (Mo. Ct. App. 1998). Missouri courts rely on the Restatement (Second) of Torts § 652B to define intrusion upon seclusion claims. *Sofka v. Thal*, 662 S.W.2d 502, 510 (Mo. 1983); *Philips v. Citimortgage, Inc.*, 430 S.W.3d 324, 331 (Mo. Ct. App. 2014). Under the Restatement, intrusion as to "the solitude or seclusion of another or his private affairs or concerns" must be both intentional and "highly offensive to a reasonable person." *Sofka*, 662 S.W.2d at 510.

### 1.    Securus Did Not "Intrude" Upon Plaintiffs' Seclusion.

As a threshold matter, a successful claim of intrusion upon seclusion requires proof of an "intrusion," which requires both an intrusive act and the actor's belief "that he lacks the necessary legal or personal permission to commit the intrusive act.'" *Fletcher v. Price Chopper Foods of Trumann, Inc.,* 220 F.3d 871, 876 (8th Cir. 2000) (analyzing intrusion upon seclusion claim under Arkansas law by reference to § 652B) (quoting *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989) (applying § 652B to a seclusion claim under Pennsylvania law)).[2] Plaintiffs cannot establish that Securus intruded upon Plaintiffs' alleged seclusion both because the record fails to prove any actually intrusive act and because Securus reasonably believed each ping conducted through its LBS platform was legally supported. SUMF at ¶ 4.

Securus did not commit any intrusive act because it did not "oversee or overhear the plaintiff's private affairs." Rest. (Second) of Torts § 652B (comment b); *see also* ECF 53 at ¶¶ 65-66 (anchoring Plaintiffs' invasion of privacy claim to allegations of an intrusion upon their "locations and private affairs"). Plaintiffs conceded in deposition testimony they have no idea where they were or what they were doing when Hutcheson pinged their phone numbers. SUMF at ¶ 7. The record also lacks evidence that even one ping attempt actually and precisely disclosed the location of any of the Plaintiffs. *Id*. at 6. Instead, Hutcheson testified that he frequently received no location information in response to his queries, or obtained information about Plaintiffs when they were in public places such as driving on a highway. *Id*. at ¶¶ 5-6. The LBS platform did not

---

[2] All intentional torts in Missouri require that a plaintiff demonstrate "an intent, either actual or constructive, to produce . . . harm, without just or lawful excuse or justifiable cause or occasion." *Sanders v. Daniel Int'l Corp.*, 682 S.W.2d 803, 811 (Mo. 1984).

enable anyone to see or hear anything about what Plaintiffs were doing. *Id*. at ¶ 2. The record is thus bereft of evidence that Plaintiffs' "private affairs" were revealed to anyone.

A defendant in an intrusion upon seclusion claim does not face "liability for observing [a person] or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye." Rest. (Second) of Torts § 652B (comment c). Indeed, a person's (near) real-time location in public is not a private subject matter, even if advanced technology is used to ascertain that location. *United States v. Knotts,* 460 U.S. 276, 282 (1983) ("Visual surveillance from public places . . . would have sufficed to reveal all of these facts to the police. The fact that the officers in this case relied not only on visual surveillance, but also on the use of the beeper . . . does not alter the situation."); *United States v. Skinner,* 690 F.3d 772, 778 (6th Cir. 2012) ("There is no inherent constitutional difference between trailing a defendant and tracking him via such technology."); *see also, e.g., Hicks v. Sullivan*, 2020 U.S. Dist. LEXIS 70437, at *67 (C.D. Cal. Feb. 21, 2020) ("What matters is the surveillance could have been accomplished visually on public streets.").

Plaintiffs cannot show on the record of this case that they were engaged in any activity cloaked under a reasonable expectation of privacy when Hutcheson pinged their cell phone numbers, let alone that he received information from any one of his attempted pings. Additionally, Missouri State Highway Patrol officers like Plaintiffs have "no right or expectation of privacy regarding information contained in such systems or devices," like "Patrol data, voice mail, e-mail boxes, pager and communications memory banks, and other electronic storage systems," at any point during their employment. SUMF at ¶ 8. Because Plaintiffs cannot identify their locations at the times the pings occurred, they cannot prove that those locations constituted a "secret and private subject matter" or that they had a right to keep those unknown locations private. Thus, their intrusion upon seclusion claim necessarily fails as a matter of law.

Even if Plaintiffs could prove that they occupied private spaces when Hutcheson pinged their phone numbers (they can't), and that he obtained such information rather than null-responses (they can't), the lack of precision in (near) real-time CSLI is so great as not to intrude on any

private location about Plaintiffs. Hutcheson testified to testing the LBS system to produce CSLI as much as a half mile away from a targeted phone. *Id*. at ¶ 2. Securus, through its corporate representative, provided even more detail about the inaccuracy of the LBS technology, noting it would likely provide data up to a mile off in a rural area like Mississippi County. *Id*. In another case, the Supreme Court embraced a similar evidentiary record about the imprecision of CSLI. *See Carpenter*, 138 S. Ct. at 2019 (Roberts, C.J.) & 2225 (Kennedy, J., dissenting). In short, the CSLI that Hutcheson might have received in response to his pings was too imprecise to reveal "sensitive and private information" about Plaintiffs to support their intrusion upon seclusion claim.

Separately, the record is devoid of evidence that Securus believed Hutcheson lacked the necessary legal or personal permission to ping Plaintiffs' cell phones, as the law requires. SUMF at ¶ 4 *see also Fletcher,* 220 F.3d at 876 (finding intrusion where person used an inapplicable form to fabricate authority to obtain plaintiff's medical information). Indeed, Hutcheson assented to the Securus LBS policy demanding his compliance with the law. SUMF at ¶ 3. Moreover, each time Hutcheson pinged Plaintiffs' phone numbers, he submitted an affidavit swearing to his legal authority to do so, and separately checked a virtual box in the LBS platform to certify his legal authority to do so. *Id*. at ¶ 4. There is no evidence that Securus ever believed or even suspected that Hutcheson's requests regarding Plaintiffs lacked the necessary legal authorization. *Id*.

Relatedly, the record fails to show that Securus obtained CSLI related to Plaintiffs' cell phones through unreasonable means. "[T]he requirement for intrusion on seclusion is not that [the defendant] was unreasonable in *handling* the [information], but that [the defendant] unreasonably *obtained* the [information]." *Mackey v. Belden, Inc.*, 2021 U.S. Dist. LEXIS 145000, at *33-34 (E.D. Mo. Aug. 3, 2021) (Ross, J.) (emphases in original). Securus provided CSLI to the MSCO in its normal course of business, following its normal procedures, each time upon Hutcheson's submission of a signed and notarized affidavit indicating that he either had Plaintiffs' consent or pursuant to exigent circumstances. The unreasonable nature of Hutcheson's conduct—in repeatedly flouting the LBS policy and lying to Securus—cannot transform Securus' basic operations into an "unreasonable means" to support Plaintiffs' intrusion upon seclusion claim

- 7 -

against it. *See, e.g.*, *Blakeney v. City of Pine Lawn*, 2020 U.S. Dist. LEXIS 141472, at *35-36 (E.D. Mo. Aug. 7, 2020) (dismissing intrusion upon seclusion claim based on the unreasonable conduct of a third party, not defendants); *see also, e.g., St. Anthony's Med. Ctr. v. H.S.H.*, 974 S.W.2d 606, 609-10 (Mo. App. 1998) (dismissing intrusion upon seclusion claim where defendant obtained private information in the ordinary course of business).

Additionally, this element is generally satisfied only if plaintiffs can prove the defendant "saw 'whatever there was to see' in the [area of privacy or seclusion]." *Durrell v. Tech Elecs., Inc.*, 2016 U.S. Dist. LEXIS 157689, at *7 (E.D. Mo. Nov. 15, 2016). Securus did not. It acted merely as a conduit between Plaintiffs' wireless phone carriers and Hutcheson, and no Securus employee ever saw the CSLI associated with Hutcheson's pings. SUMF at ¶ 2. Securus also did not keep that CSLI on servers or other storage media. *Id*. Moreover, it is not even clear that Hutcheson obtained CSLI for any of the numbers he pinged. *Id*. at ¶ 6. Because Securus did not see or store the CSLI— even if it was obtained—Securus cannot be deemed to have obtained it, reasonably or otherwise.

### 2.     Securus' Actions Were Not Highly Offensive To A Reasonable Person.

Plaintiffs contend that it was "highly offensive" for Securus to have relied on the representations of a law enforcement officer, and his and the MCSO's contractual obligation to comply with all laws, without scrutinizing each affidavit Hutcheson made to support his pings. This notion calls for imposing on private contractors a standard completely at odds with the deference regularly afforded to members of law enforcement. *See e.g., United States v. Jackson*, 2011 U.S. Dist. LEXIS 122998, at *7 (E.D. Mo. Oct. 25, 2011) ("[C]ourts must accord deference to a police officer's training and experience . . . .") (citing *United States v. Jones*, 606 F.3d 964, 967 (8th Cir. 2010). Moreover, the record reflects that Securus did not use—let alone see—CSLI associated with Hutcheson's pings of Plaintiffs, and thus failed to act in any highly offensive manner. SUMF at ¶ 2. Securus is aware of no authority that supports Plaintiffs' position.

### B.     Plaintiffs' Section 1983 Claim Against Securus Fails As A Matter Of Law.

A Section 1983 claim requires a showing that a defendant acting under color of law violated a clearly established right secured by the Constitution or created by federal statute. *Cook v. City of*

*Bella Villa*, 582 F.3d 840, 848-49 (8th Cir. 2009). If the defendant is a private actor like Securus, a plaintiff must also prove that the defendant willfully participated with genuine state actors in an unconstitutional scheme, reached a mutual understanding concerning the unlawful objective of their conspiracy, and having "understood [the state actor's] intent, . . . acted accordingly." *Meier v. City of St. Louis,* 934 F.3d 824, 829-30 (8th Cir. 2019). The record lacks proof of these elements.

### 1.    Securus Did Not Violate Clearly Established Constitutional Rights.

Among other things, Plaintiffs' Section 1983 claim depends upon the notion that they enjoyed in 2014 a clearly established Fourth Amendment right to keep private the (near) real-time CSLI most proximate to the signals in their cell phones. *See Cook*, 582 F.3d at 848-49. There is no such clearly established right, even today. The Fourth Amendment generally bars a "search" or "intrusion" into a "constitutionally protected area." *Katz v. United States*, 389 U.S. 347, 351-53 (1967). But no authority in 2014 supported the notion that (near) real-time CSLI even arguably qualified as such a constitutionally protected area. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (explaining that at the time of allegedly unconstitutional conduct, "existing precedent must have placed the statutory or constitutional question beyond debate"). Indeed, "all five courts of appeal to have considered, before *Carpenter*, whether the warrant requirement in the Fourth Amendment applied to historical cell site information concluded . . . that it did not." *United States v. Zodhiates*, 901 F.3d 137, 144 n.5 (2d Cir. 2018) (collecting authorities). The (near) real-time CSLI—which only approximated a cell phone's location based on the location of the cell tower(s) receiving the phone's signal—thus failed to trigger any "legitimate expectation of privacy" of Plaintiffs or anyone else in 2014. *Smith v. Maryland*, 442 U.S. 735, 743 (1979); *see also United States v. McCaster*, 193 F.3d 930, 933 (8th Cir. 1999).

In early motion practice, Plaintiffs relied upon *Carpenter* as a source of law to establish the aforementioned right, but even then conceded that "the law was not settled on this issue" prior to the Supreme Court's publication of that decision on June 22, 2018. ECF 70 at 5-6 and n.1. *Carpenter* thus post-dates by four (4) years the actions that Hutcheson took with regard to Plaintiffs'

CSLI in 2014. Moreover, even at the time of its publication, *Carpenter* announced a new and "narrow" decision, expressly limited to finding a constitutional search when law enforcement had extensively mapped out "historical CSLI" associated with the records of a private citizen's cell phone signals over a period of more than four months, resulting in access to over 100 data points every day on that individual. *Id.* at 2220.[3] As *Carpenter* explained, "this case is not about 'using a phone' or a person's movement at a particular time. It is about a detailed chronicle of a person's physical presence compiled every day, every moment, over several years." *Id.*

Confronting these issues when addressing the initial motion to dismiss by Securus, this Court acknowledged "factual differences between the long-term continuous monitoring through CSLI used in *Carpenter* and the use of cell-tower pings present in this case," but deemed "the similarities . . . sufficient to survive dismissal." ECF 73 at 5-6. The Court thus stated, "[a]t this early stage, the Court concludes that plaintiffs have alleged sufficient facts to allow the Court to conclude that the use of LBS is a Fourth Amendment search." *Id.* at 6. The evidentiary record developed during discovery provides no basis to reach the conclusion that the use of LBS to obtain the wildly imprecise (near) real-time CSLI associated with one's cell phone number constitutes a clearly established search governed by the Fourth Amendment. Indeed, *Carpenter* post-dates the conduct at issue in this case by four (4) years and therefore cannot support a conclusion that the law was clearly established when Hutcheson pinged Plaintiffs' phone numbers. *See Brousseau v. Haugen*, 534 U.S. 194, 200 n.4 (2004) (per curiam) (cases that "post-date the conduct in question" are "of no use in the clearly established inquiry").

Moreover, the record is undisputed that not one ping of the CSLI associated with Plaintiffs' phone numbers resulted in a disclosure of the actual whereabouts of their phones, and instead provided CLSI that was approximately half a mile off. SUMF at ¶¶ 2, 6-7. Further, it is unclear what information, if any, Hutcheson even obtained from each ping request. Hutcheson testified

---

[3] At the motion to dismiss stage, Securus did not argue this point about whether the law was ever clearly established because the specific dates of pings associated with Plaintiffs' phones were not alleged in the SAC. Securus nevertheless explained that *Carpenter* did not even express a view on "real-time CSLI." ECF 71 at 1-2; *see also Carpenter*, 138 S. Ct. at 2217.

that many of his requests failed, and did not provide any location information in response to his queries of the LBS software. SUMF at ¶ 6. Likewise, Plaintiffs have no idea where they were when Hutcheson pinged their phone numbers. *Id*. at ¶ 7.

With respect to the (unidentified) pings that may have returned a result, there is no expectation of privacy in public places—and no clear expectation of privacy about one's general vicinity. *See Knotts,* 460 U.S. at 282. Moreover, "[n]othing in the Fourth Amendment prohibit[s] the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded." *Id*. The record establishes that the (near) real-time CSLI associated with Plaintiffs' phones at most may have supplemented observations that "could have been obtained through visual surveillance," rendering Hutcheson's use of LBS technology innocuous under the Fourth Amendment. *Skinner,* 690 F.3d at 778. Indeed, Hutcheson testified that a number of the ping attempts—particularly of Plaintiff Holcomb—occurred when Plaintiff Holcomb was otherwise known to be traveling on public roads. The pings were merely efforts to estimate the timing of Plaintiff Holcomb's arrival to Mississippi County. SUMF at ¶ 5. In these instances, Hutcheson testified that if he had sufficient resources, he could have deployed personnel to conduct visual surveillance of Plaintiff Holcomb. *Id*.

The record is thus devoid of any evidence that Plaintiffs were secluded from public view at the time of any one of  Hutcheson's pings, or that he learned something about their location not otherwise discoverable through another lawful means. *Id*. at ¶¶ 6-7. This record meaningfully distinguishes this case from the historic mapping and tracking in *Carpenter*. For isolated pings of cell phones that return, at best, imprecise CSLI, the technology fails to reveal any meaningful, private information of the intended target. *See Knotts,* 460 U.S. at 282 (rejecting use of a tracking device as a search because "there [was] no indication that the beeper was used in any way to reveal information as to the movement . . . *within* the cabin, or in any way that would not have been visible to the naked eye from outside the cabin") (emphasis added).

Furthermore, even if *Carpenter* could apply—and it is too late and too different to operate in that way—extending *Carpenter* to hold that individuals in 2014 had a constitutional right to

- 11 -

privacy in isolated, (near) real-time CSLI associated with their cell phones is unwarranted. In *Carpenter*, the Supreme Court, by a 5-4 decision,[4] narrowly held that the gathering of historical data including "12,898 location points," for "an average of 101 data points per day" over a period of months, impacted privacy rights. 138 S. Ct. at 2212. Such an extensive collection of data enabled the government to map out the defendant's movement over time, despite the imprecision of the technology. *Id.* at 2217. In contrast, Plaintiffs Cooper, Johnson, and Stoelting each were pinged just once, and Plaintiff Patton was twice. Even Plaintiff Holcomb's numerous pings are sharply distinguished from *Carpenter*: Hutcheson often did so precisely because he was "not getting location back and so had to try repeatedly" to get any data at all. SUMF at ¶ 5. At bottom, the record does not even establish that Plaintiffs were ever in any place in which they had a legitimate expectation of privacy in their associated CSLI. SUMF at ¶¶ 5-7.

## 2.    Securus Did Not Act Under Color Of State Law.

Securus is a private company. SUMF at ¶ 1. The Court previously denied Securus' motion to dismiss in part by concluding Plaintiffs had adequately alleged a "close nexus" between Securus and Hutcheson sufficient to fairly attribute the acts of one to the other. *See, e.g.,* ECF 87 at 4; ECF 81 at 7. The Court also explained that Plaintiffs had adequately alleged that "Securus willfully participated by intentionally turning a blind eye to Defendant Cory Hutcheson's illegal activities." ECF 87 at 4 n.1. The record developed during discovery does not support these allegations.

As an initial matter, Securus published a policy requiring MCSO users of its LBS system to comply with the law. SUMF at ¶ 3. *Monell* liability is absent if an entity has "a written policy that is facially constitutional, but fails to give detailed guidance that might have averted a constitutional violation." *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 392 (8th Cir. 2007) (affirming summary judgment in favor of municipality on failure to train allegation). Hutcheson received and assented to the Securus LBS user policy months before he pinged any of Plaintiffs'

---

[4] Changes in the composition of the Court since *Carpenter* would likely yield a different result if that case were decided today. Moreover, if presented with the distinct issue of Hutcheson's isolated, (near) real-time CSLI pings, the Court would reject any clearly established right.

cell phone numbers. SUMF at ¶¶ 3-4. Additionally, each time Hutcheson pinged Plaintiffs, he uploaded an affidavit purporting to provide valid legal authority for that request, and separately checked a box in the software application, certifying that he had valid legal authority to make the request. *Id*. Hutcheson thus affirmatively took steps to mislead Securus about his authority.

If Securus' liability under this claim purports to lie in its alleged failure to train Hutcheson on the requirements of the Fourth Amendment, the claim still fails.[5] Indeed, "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). At a minimum, such a claim must rely on an entity's "failure to train *its employees*," not the employees of another. *Id*. Hutcheson worked for MCSO, not Securus, and therefore no failure to train claim can stand. Similarly, Securus' liability cannot rest on the notion that it turned a "blind eye" to Hutcheson's misconduct. A private party's liability in the Section 1983 context turns on the existence of "an agreement [among the private and public defendants] to deprive the plaintiff of constitutionally guaranteed rights." *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008). It is entirely unclear how Securus could both "agree" to engage in the deprivation of Plaintiffs' constitutional rights, while simultaneously remaining blind to it.

Even if a theory of supervisory liability could extended to a private company that lacks the power or authority to "supervise" law enforcement officers, some "evidence of a pattern of constitutional violations making it obvious that additional training or safeguards were necessary" must exist. *Szabla*, 486 F.3d at 392. The record in this case discloses that to the best of Securus' knowledge, Hutcheson was complying with the law when he pinged Plaintiffs' phones. SUMF at ¶ 4. Moreover, Securus provided LBS services for four (4) years to approximately 1,100 law enforcement agencies across the nation, and that Hutcheson is the only law enforcement officer now known to have violated its policy. This reveals no pattern of constitutional violations.

---

[5] As a general matter, "[t]he Supreme Court has not yet extended liability under the Fourth Amendment to include negligence claims." *McCoy v. City of Monticello*, 342 F.3d 842, 847 n.3 (8th Cir. 2003). Thus, mere negligence cannot support a Section 1983 or privacy law claim. *See, e.g., Young v. City of Little Rock*, 249 F.3d 730, 734 (8th Cir. 2001) (deeming an arresting officer's reliance on a police communications operator's mistake in misidentifying an innocent person as subject to arrest did not render that arrest "unreasonable" within the meaning of the Fourth Amendment).

The record shows Securus was unaware that Hutcheson violated Securus' policy when he pinged Plaintiffs' phone numbers. SUMF at ¶ 4. Indeed, Securus reasonably expected Hutcheson would act "upon [his] oath" as a law enforcement officer and comply with the law, particularly as his noncompliance would create a record of breaching MCSO's contract with Securus and exposing him to civil or criminal liability. SUMF at ¶ 4 & Ex. D.[6] It is well accepted that "a conspiracy cannot exist for purposes of § 1983 where the police are unaware of the allegedly violative nature of their actions due to the misrepresentations of a private party." *Meuse v. Stults*, 421 F. Supp. 2d 358, 364 (D. Mass. 2006); *see also Gilbert v. Feld*, 788 F. Supp. 854, 860 (E.D. Pa. 1992); *Haley v. Wascom*, No. 5:13-cv-232, 2015 U.S. Dist. LEXIS 109600, at *18 (N.D. Ohio Aug. 19, 2015). The reverse must also hold true, and thus absolve Securus of liability in this case.

### C. Lack Of Proximate Causation Between The Alleged Misconduct By Securus And Plaintiffs' Alleged Injuries Requires Entry Of Summary Judgment.

It is well known that "[t]he requirement of proving proximate cause absolves those actors whom it would be unfair to punish because of the attenuated relation which their conduct bears to the plaintiff's injuries." *Kutilek v. Union Pac. R.R.*, 454 F. Supp. 2d 871, 875 (E.D. Mo. 2006). (citations omitted). In the present case, Plaintiffs allege that Securus failed to take steps that might have prevented the misuse of its LBS technology by Hutcheson. ECF 53 at ¶ 74. They also allege callous and reckless indifference, *id.* at ¶¶ 57, 69, but no evidence in the record supports such a conclusion. Regardless, Plaintiffs anchored their claimed damages not to the pinging of CSLI related to their phone numbers but to how things played out in the rumor mill, particularly in social media—with some people apparently speculating that Hutcheson must have had some valid basis for pinging some people, including Plaintiffs. SUMF at ¶ 9.

Tellingly, these social media posts did not mention Plaintiffs. *Id.* Regardless, no act or omission by Securus can be deemed a proximate cause of Plaintiffs' claimed injuries from the rumors and gossip published years later on a few isolated social media sites. "[T]he general rule,

---

[6] Securus was also not performing a "traditional and exclusive public function" that "entwined" it with the government. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 & 309 (2001). Securus merely provided software to assist law enforcement agencies.

even in libel cases seems to be that the publisher of a libel is not liable for the voluntary republication or repetition thereof by others without his request or authority, or for current rumors or reports thereof, or the damages therefrom." *Maytag v. Cummins*, 260 F. 74, 79 (8th Cir. 1919). Thus, "one who utters a slander is not responsible, either as on a distinct cause of action or by way of aggravation of damages of the original slander, for its voluntary and unjustifiable repetition, without his authority or request, by others over whom he has no control, and who thereby make themselves liable to the persons slandered, and that such repetition cannot be considered in law a necessary, natural, or probable consequence of the original slander." *Id.* at 81 (quoting *Hastings v. Stetson*, 126 Mass. 329, 331 (1878) (Gray, C.J.)). If an injury from republication of libel is not proximately caused by the original slander, it defies all logic to say that one's injury from a brand new libel speculating about the justification of another's act is proximately caused by that act.

Moreover, these social media posts discuss a matter of "legitimate public concern"—a criminal investigation of then Sheriff Hutcheson. *See Y.G. v. Jewish Hosp. of St. Louis*, 795 S.W.2d 488, 499-500 (Mo. App. 1990) (finding no invasion of privacy or resulting damages where the private matter at issue is the subject of criminal investigation or public legal proceedings).[7] There is no basis to award emotional distress damages based on this public discussion years after the isolated pings of Plaintiffs, who may not recover speculative emotional distress damages in a tort action anyway. *Young v. Mercantile Trust Co. Nat'l Assoc.*, 552 S.W.2d 247, 250 (Mo. App. 1977); *see also Halley v. St. Joseph R., L., H. & P. Co.*, 115 Mo. App. 652, 655 (1906). Plaintiffs cannot, as a matter of law, recover for such speculative damages based on a public debate by unidentified persons who do not direct any of their remarks toward Plaintiffs, and whose discussion did not directly flow from Hutcheson's pings of Plaintiffs' phones.

## V.     Conclusion

The facts of this case do not establish liability for a constitutional violation or invasion of privacy by Securus, which respectfully requests that its motion for summary judgment be granted.

---

[7] Likewise, many of the social media posts *denigrate* Sheriff Hutcheson for his activities or express support for the Missouri State Highway Patrol. *See* SUMF ¶ 9, Ex. P at 7, 11, 14, 29-31, 42, 46 ("Thanks for getting this thug off the streets!"), 47, 51, 53, 54, 56, 59, 61.

Dated: September 10, 2021                    */s/ Adam R. Fox*

                                            Adam R. Fox (admitted *pro hac vice*)
                                            Gabriel Colwell (admitted *pro hac vice*)
                                            Marisol C. Mork (admitted *pro hac vice*)
Squire Patton Bogs (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone: (213) 624-2500
Facsimile: (213) 623-4581
adam.fox@squirepb.com
gabriel.colwell@squirepb.com
marisol.mork@squirepb.com

Shawn T. Briner, #MO47286
Briner Law Group
424 S. Woods Mill Road, Suite 330
Chesterfield, Missouri 63017
Telephone: (314) 478-7227
Facsimile: (314) 448-4300
shawn.briner@brinerlaw.com

*Attorneys for Defendant Securus Technologies, LLC f/k/a Securus Technologies, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will cause an electronic notice to be sent to all registered counsel of record.


Dated:   September 10, 2021                                 /s/ *Adam R. Fox*

*Attorney for Defendant Securus*
*Technologies, LLC f/k/a Securus*
*Technologies, Inc.*